(60 South. 376.)

No. 19,241.

LOUGARRE v. W. D. HAAS & CO.

(Dec. 2, 1912. Rehearing· Denied Jan. 6, 1913.)

*(Syllabus by the Court.)*

1. SET-OFF AND COUNTERCLAIM (§ 41*)—SUB-JECT-MATTER—PARTIES.

Where the evidence shows that a son dealt directly with a commission merchant, shipping cotton on bills of lading held by him, the commission merchant will not be allowed to off-set the amount to the credit of the son by the debts of the father previously contracted.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 76–79, 81; Dec. Dig. § 41.*]

2. FACTORS (§ 22*)—LIABILITIES—VIOLATION OF INSTRUCTIONS.

Where one ships cotton to a commission merchant, with instructions not to sell the cotton until notified, and the commission merchant sells without such notification, the shipper will be entitled to be paid the highest price for which the cotton sold on the day on which he ordered the cotton to be sold.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 22; Dec. Dig. § 22.*]

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; G. H. Couvillon, Judge.

Action by Ferdinand D. Lougarre against W. D. Haas & Co. From the judgment, plaintiff appeals. Modified.

A. J. Lafargue and E. L. Lafargue, both of Marksville, for appellant. Coco & Couvillon, of Marksville, for appellee.

BREAUX, C. J. This is a suit for the settlement of an account between plaintiff and defendant, and for judgment for balance due.

Plaintiff claims that in the years 1907, 1908, and 1909 he shipped to the firm of W. D. Haas & Co. 60 bales of cotton worth $4,605.92 on the basis of 16 cents per pound; that he instructed the defendant not to sell the cotton until instructed; that defendant advanced to him on the cotton at first $40 per bale, total $2,670. Afterwards, on his request, the amount advanced on each bale was increased. That of the cotton consigned to defendant five bales were destroyed by fire in January, 1908, on which plaintiff recovered the insurance, which must be deducted from the sum before mentioned, leaving due to defendant $2,342.15. Deducting this amount from $4,605.92, sum first above mentioned, there is left $2,263.77, amount claimed by plaintiff.

Defendant on its part denies all liability, and denies that it was ever directed by plaintiff to hold his cotton; and defendant avers that it never had any dealings with plaintiff, but that it had dealings with his father exclusively. Defendant alleged that, in the winter of 1906–1907, Dr. T. Lougarre, plaintiff's father, who was a merchant, shipped 47 bales of cotton to it on which it agreed to advance $40 per bale, which advances, made from time to time, amounted to $1,880; that later it advanced to him $600, total $2,480. The allegation of defendant at this point is, in substance, that the late Dr. Lougarre requested that a new account be opened, not in his own name, but in that of his son, F. D. Lougarre.

(For the sake of some brevity, plaintiff will be referred to as Ferdinand.) Thereafter the business was conducted in the name of the son, Ferdinand, who shipped other bales of cotton.

Defendant promised to, and did, advance $45 on a bale instead of $40. There was a fall in the price of cotton. Defendant called on the father of plaintiff for other cotton to secure the amount due it by plaintiff. On the 12th day of September, 1908, they shipped two bales of cotton, and defendant's manager testified that he expected more cotton for the protection of its advances.

At this point the averment of respondent is that it held the cotton it received until January 1, 1909, "at which time, after a sharp advance in the price of cotton," respondent admits that it sold "cotton at 8¾

cents, as alleged by plaintiff in his petition."

Defendant alleged further that it rendered an account to F. L. and F. D. Lougarre, showing a balance due to it of $1,130—that is, $1,130 due on the old account, and $127.98 on the new account; that is, if the court decides that the father and the son owed the claims of plaintiff, then the first is due by them. If the father did not owe the amount jointly with the son, then the second amount is that due by the plaintiff. It may be mentioned here that the son alone is indebted on the new account, and that is the only claim before the court by defendant.

It was asserted at bar by defendant's counsel (and not denied by plaintiff's counsel) that, since the trial in the district court, a satisfactory settlement had been made by plaintiff and defendant in so far as relates to these five bales of the cotton; as to these bales, we will give ourselves no further concern.

Defendant in the answer reiterated that Ferdinand has no interest in the cotton; that all was for the account of Dr. T. L. Lougarre, the father, who was insolvent; and that plaintiff brought this suit against defendant to the end of evading paying the amount due to defendant by the late father from the proceeds of cotton held for his account. The defendant alleged, should the court arrive at a different conclusion, it claims that amount before mentioned.

Judgment was rendered for plaintiff for $141.67, with 5 per cent. interest from judicial demand.

Plaintiff appealed.

Defendant answered the appeal and prayed for a dismissal of plaintiff's suit.

In order to intelligently dispose of the case, we insert the following:

[1] Plaintiff's contention is that as he held in his name a bill of lading for each bale he consigned to defendant, and that as the cotton under his agreement with defendant was to be held and not sold until further orders, defendant should not have disposed of it on a depressed market; that defendant was amply secured, and there was no necessity of selling to cover its advances; that even defendant's managing agent testified that it was agreed that, as long as there was sufficient margin to its protection, to postpone the sale. Plaintiff also alleged that, at the time the six bales were shipped to defendant in 1909, he did not know that his cotton which he had consigned to defendant, commission merchant, had been sold; that he was only informed of the sale in November, 1909, at which time he called on defendant to order the sale of the cotton; it was then, as he states, that he discovered that he had been "taken in," to use his words, on January 1, 1909, despite the fact that he had shipped margin in accordance with the notice received from defendant.

Defendant, on the other hand, insists that Ferdinand was not acting for himself, but for his father. It asked for the dismissal of the suit, or, in the alternative, for a judgment for the amount due by both father and son, as the contention of defendant is that both accounts were merged in one.

The father, Dr. Lougarre, was very much in debt at the time that, on his request, a new account was opened in the name of his son instead of his own. About that time his wife obtained a judgment against him, and he made a dation en paiement of all his property to her, and she continued the business previously carried on by her husband as a merchant.

Dr. Lougarre called on defendant and requested that a new account be opened. Defendant's manager was under the impression that Dr. Lougarre and his son called on him together and agreed to the new account to be opened against Ferdinand. The latter denied that he was present and ever entered into an agreement whereby he and his fa-

ther would be liable for the new account. It appears that Dr. Lougarre has another and a younger son, and the manager assumed that Ferdinand was the son who called.

Relative to this interview between Dr. Lougarre and the manager of defendant, the preponderance of the evidence shows that Ferdinand was not present, and it follows that he did not enter into the agreement before mentioned.

Ferdinand was the clerk of his father, earning, he says, $100 a month—a young clerk in a country store. He afterward became the agent and business manager of his mother, and lately is in business for himself. These facts were brought forward prominently during the trial in order to rebut defendant's contention that the business was in the name of the father and that the son was without means and ability to conduct the business. The son stated, as a witness, that his father had no means after the sale he made in 1907 to Mrs. Lougarre, the wife. He also stated that his business was not at all connected with that of his father; that the bills of lading for the cotton were in his name; that his father did not buy cotton; that part of the cotton was bought in the name of the mother and sold to him; that he paid his mother the price.

With reference to defendant, in justice to it and as evidence that it did not take in the cotton, as charged by plaintiff, we insert the following question propounded to plaintiff:

"Q. If you sold to them or to anybody else, it was understood that you sold at New Orleans market with no freight?
"A. Yes, sir."

We take it from the foregoing and other evidence upon the subject that defendant, when prices were normal, had the right to buy, provided it paid New Orleans prices, less freight from Bunkie to that city.

In opening the new account in accordance with the mere suggestion of Dr. Lougarre, the defendant was placed at considerable disadvantage when it sought to prove that the business continued to be conducted with the plaintiff after Dr. Lougarre had withdrawn his name. The business manager had not followed the details of plaintiff's business; he did not know that Ferdinand acted in his own name and that the father had withdrawn from the business.

Plaintiff, as a witness, is severely criticised by defendant's counsel; none the less, we do not think that the facts are so entirely otherwise than he states that we should come to the conclusion that he has falsified the business to benefit himself by false statements. It was possible for him to carry his point under the circumstances without the necessity of any false statement, for it seems to us to be evident that defendant had confidence in both father and son at one time. It is not evident that Ferdinand assumed the debts of his father at the time that the father ordered a new account to be opened. As evidence of his activity in business, Ferdinand testified, among other things, that he borrowed money from the defendant in his cotton transactions, also from a bank, and that for this and other reasons he was amply able financially to become owner of the cotton he claimed as owner.

[2] To sum up the facts: Dr. Lougarre shipped cotton to defendant as his merchant. Prior to October, 1907, and afterward, he was involved in debt and sought to protect himself from his creditors. He ex parte had a new account opened, as defendant's manager stated. Ferdinand denies that he had anything to do with whatever agreement defendant entered into with his father. He produced bills of lading showing that the cotton was shipped in his name, and the father does not appear to have been connected with the dealings between the son and the defendant. He, therefore, is not bound. As to the sale of the cotton: there evidently

was some talk about keeping the cotton; other cotton was shipped as a margin to hold the cotton. If the defendant had the right to sell that cotton as it claimed, it did not have the right to sell it without giving notice to plaintiff of its intention to sell. The defendant owes the price at which cotton was selling in the market at the time that plaintiff testified he called on the defendant for the purpose of having the cotton sold.

We find that instead of 48 bales there were 49. The bills of lading foot up over that number, subject to some deduction, which we have allowed. The bales shipped in the name of Ferdinand must remain to his credit; they were shipped on his bill of lading, and his right to them is supported by the facts. Defendant's statement shows that two bales, weighing 840 pounds, were received, and not one bale. We therefore add one bale, increasing the amount of plaintiff's credit by $39.37½.

The question remaining for decision is the price. The judge of the district court adopted the highest price at which cotton sold on the day that plaintiff called upon the defendant to see to its sale.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by adding to the amount heretofore allowed to plaintiff the sum just above mentioned, to wit, $39.37½, making $179.17 as the amount of the judgment; that appellee pay the costs of appeal.